<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

HASSAN CHILDS

No. 22cr30 (EP)

**MEMORANDUM ORDER**

**PADIN, District Judge.**

In an omnibus motion, Defendant Hassan Childs moves to, *inter alia*, suppress the fruits of what he claims was an illegal search and seizure.  D.E. 77 ("Motion" or "Mot.").  The Government opposes.  D.E. 90 ("Opposition" or "Opp'n").  Defendant replies.  D.E. 101 ("Reply").

Initially, after reviewing the parties' submissions, the Court scheduled an evidentiary hearing to address disputed versions of the stop and search of Defendant.  D.E. 98 at 1.  The Court now writes to refine its prior order, and in doing so, partially resolves Defendant's Motion.  For the reasons explained below, the Court will **DENY in part** Defendant's Motion and will reserve its ruling on the remainder of Defendant's Motion until a later point.

## I.    BACKGROUND[1]

In early June 2021, a recently arrested confidential informant[2] ("CI") told officers in the Essex County Sheriff's Office ("ECSO") that a short and stocky black male with short hair, a full

---

[1] When deciding a motion to suppress, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."  *United States v. Raddatz*, 447 U.S. 667, 679 (1980).

[2] The CI had been arrested for selling illegal prescription pills in Newark, New Jersey, and according to the Government, provided information to law enforcement in the hope of reducing his sentence.  Opp'n at 1.

beard, and glasses was selling illegal prescription pills near Avon Avenue and South 10th Street of Newark, New Jersey.  D.E. 90, Ex. A ("Incident Report") at 1.  According to law enforcement, this is an area known for open-air drug trafficking.  *Id.*  The CI also informed officers that this individual drove a gold Buick with dark tinted windows bearing New Jersey temporary license plate number W140318 (the "Buick"), a vehicle known by law enforcement to frequent the area where the CI placed it.  *Id.* at 1-2.  In addition, the CI told law enforcement that Defendant is "known to carry a firearm in his black Nike fanny pack."  *Id.* at 2.

Based on this information, around 1:00 PM on June 11, 2021, several members of law enforcement conducted surveillance in the area.  *Id.*  One member of law enforcement saw a gold Buick with a license plate number matching the one provided by the CI parked in the driveway of a house on Avon Avenue, partially blocking the sidewalk, and protruding out onto the street.  *Id.* A few moments later, a man[3] matching the CI's description—a short stocky black male with a full beard and glasses wearing a black Nike fanny pack around his torso—exited the front door of the house and opened the Buick's front passenger side door.[4]  *Id.*  Then, the individual opened the back passenger side door, removed a large bag from the back seat area of the car,[5] and placed it inside of the trunk.  *Id.*  At this point, law enforcement requested back-up, exited their vehicles, and approached the individual to further investigate.  *Id.*

Although the parties dispute exactly what happened next, they seem to agree that law enforcement approached Defendant, announced they were police, and then frisked his black Nike fanny pack for weapons.  *Id.*; Mot. at 5.  The officer who frisked Defendant claims to have

---

[3] Later identified as Defendant.
[4] When first observed by law enforcement, the individual was wearing a teal hat.  Incident Report at 2.  Law enforcement presumably could not confirm the individual's haircut.
[5] Defendant states this was a boxed child's car seat.  D.E. 90, Ex. B, Affidavit of Hassan Childs, ("Childs Affidavit") ¶ 3.

"immediately felt what seemed like loose round pills that were not contained within a bottle" inside

the fanny pack. Incident Report at 2. However, according to Defendant:

> Officers ran toward me and announced themselves as police. I was told to put my hands up and I complied. The officer closes [sic] to me put one hand on the "fanny pack" I had around my chest and frisked my body with his other hand. Immediately after frisking me the officer removed the "fanny pack" from my person and asked me "where is the weapon?" He then proceeded to unzip the "fanny pack" and search through it. The officer then unzipped the inner pocket of the "fanny pack" and began removing my identification, miscellaneous cards and 2 chains before removing the pills which were in a small sandwich bag.
>
> Childs Affidavit ¶ 4.

Law enforcement recovered 14 yellow round pills from the fanny pack, which were

suspected (and later confirmed) to be oxycodone.[6] Incident Report at 2; *see also* Opp'n at 2. The

officers then arrested Defendant for unlawful possession of the pills. Incident Report at 2.

## II.    ANALYSIS

The Fourth Amendment affords protections against "unreasonable searches and seizures"

of a person's "effects." U.S. Const. amend IV. "Generally, for a seizure to be reasonable under

the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United*

*States v. Robertson,* 305 F.3d 164, 167 (3d Cir. 2002). When law enforcement executes a seizure

without a warrant, the government must prove by a preponderance of the evidence that "each

individual act constituting a search or seizure under the Fourth Amendment was reasonable."

*United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). Evidence obtained through unreasonable

searches and seizures must be suppressed as "fruit of the poisonous tree." *United States v. Bey*,

911 F.3d 139, 144 (3d Cir. 2018) (citing *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006)).

---

[6] The Court makes no findings of fact and takes no position on the constitutionality of this *search*, which will be addressed at the upcoming evidentiary hearing.

Law enforcement may conduct a brief, investigatory stop when the officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 88 (1968)). "Reasonable suspicion" requires less than probable cause, but there must be "at least a minimal level of objective justification for making the stop." *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010) (internal quotations omitted). When considering if a police officer had reasonable suspicion to stop, reviewing courts first analyze the events leading up to the stop, and then decide whether those facts, "viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Under this approach, courts consider the officers' background and training and permit them "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The standard requires only a "minimal level of objective justification." *Wardlow*, 528 U.S. at 123. "Courts give considerable deference to police officers' determinations of reasonable suspicion." *United States. v. Mosley,* 454 F.3d 249, 252 (3d Cir. 2006). "As a general rule, the initial burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992)). "The ultimate question is whether a reasonable, trained officer . . . could articulate specific reasons justifying" the seizure. *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003).

       *1.*     *The seizure*

The Court must first determine the moment Defendant was seized. *Brown*, 448 F.3d at 245. "A seizure occurs when there is either (a) 'a laying on of hands or application of physical

force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

Defendant argues he was seized when law enforcement detained him at the Buick. Mot. at 6. To support this argument, Defendant points to two facts: (1) Defendant's encounter with law enforcement was "non-consensual"; and (2), under the circumstances, no reasonable person would believe they were free to leave. Mot. at 7. The Court agrees. Defendant attests that he complied with law enforcement's show of authority, Childs Affidavit ¶ 4, and the Government does not dispute that statement. Therefore, the Court concludes that Defendant was seized when first approached, and that law enforcement needed reasonable suspicion to justify the *Terry* stop at the outset.[7]

## 2.    Whether the seizure was supported by reasonable suspicion

The seizure of Defendant followed the CI's tip and law enforcement's observations of Defendant on June 11, 2021. "A tip can serve as the foundation for reasonable suspicion if it is sufficiently reliable." *United States v. Carstarphen*, 298 F. App'x 151, 154 (3d Cir. 2008).

Defendant argues that the initial seizure of Defendant, and subsequently the frisk of his fanny pack, were not supported by any recognizable constitutional justification. Mot. at 7. According to Defendant, law enforcement's decision to stop Defendant was solely based on the "testimony of a recently arrested drug dealer who had no[] track record of reliability," and "the

---

[7] Defendant argues that a seizure "is wholly improper when made for investigatory purposes unless probable cause exists to justify the stop." Mot. at 6 (citing *Fla. v. Bostick*, 501 U.S. 429, 434 (1991)). The Court disagrees. Only reasonable suspicion is required to seize an individual. *See United States v. Sears*, 835 F. App'x 671, 672 (3d Cir. 2020) (citing *United States v. Lowe*, 791 F.3d 424, 430 (3d Cir. 2015)) ("To evaluate the constitutionality of a stop, we first identify the moment when the suspect was seized and then determine whether the officers had reasonable suspicion at that time.").

5

only independently verifiable information was the physical description of [Defendant], and that alone cannot be the basis for reasonable suspicion." *Id.* at 7-8.

"When a *Terry* stop is based on a tip provided by an informant, we must scrutinize the informant's veracity, reliability, and basis of knowledge to determine whether the information relied upon by the police was sufficient to establish reasonable suspicion for the stop." *United States v. Johnson*, 592 F.3d 442, 449 (3d Cir. 2010) (internal quotations omitted). Certain aspects of tips indicate reliability: (1) whether the tip was conveyed to law enforcement in a face-to-face interaction; (2) whether the informant can be held responsible if their allegations are fabricated; (3) whether the information is not readily available to any observer; (4) whether the informant has recently witnessed the alleged criminal activity; and (5) whether the tip predicts what will follow. *Brown*, 448 F.3d at 249-50 (internal citations omitted). The Court considers all factors, although "no single factor is dispositive or even necessary to render an informant's tip reliable." *Id.* (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)). Often, a tip's reliability is established through independent police corroboration of details of the informant's tip. *United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 237 (1983)).

After considering these factors, the Court concludes that the CI's tip, especially once corroborated in nearly every facet, provided law enforcement with reasonable suspicion to stop Defendant. Unlike an anonymous phone call, the CI's tip here was "given face to face," which courts have recognized are "more reliable" because "the officer has an opportunity to assess the informant's credibility and demeanor." *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000). Relatedly, a known informant—who was recently arrested—could be held accountable if his allegations turned out to be false, and thus, had a strong incentive to tell the truth. *Fla. v. J.L.*, 529 U.S. 266, 270 (2000); *see also United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991)

6

("[A] face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false.").

Defendant contends that "the only independently verifiable information was the physical description of [Defendant], and that alone cannot be the basis for reasonable suspicion." Mot. at 8. Defendant is correct that Third Circuit "case law is clear—'an excessively general description . . . in the absence of corroborating observations by the police[ ] does not constitute reasonable suspicion[.]'" *United States v. Foster*, 891 F.3d 93, 105 (3d Cir. 2018) (citing *Brown*, 448 F.3d at 252); *see also United States v. Bailey*, 743 F.3d 322, 349 (2d Cir. 2014) ("[G]eneric descriptions of race, gender, and build, without more, have been held insufficient to justify reasonable suspicion."). But here, the CI provided more than a generic physical description: the CI noted characteristics including Defendant's haircut, facial hair, and glasses. Incident Report at 1.

In any event, the Court views the physical description provided by an informant not in "isolation," but rather, "in light of the totality of the circumstances known to [law enforcement] at the time [they] made the stop and with due deference to [their] years of experience patrolling the area." *Foster*, 891 F.3d at 105. At the point of the seizure, the CI's tip correctly identified several pieces of information in addition to the physical description of the suspect, including: (1) the Buick's make, color, and tinted windows; (2) the Buick's exact temporary license plate number; (3) that the individual would be found around South 10th Street and South Orange Avenue;[8] and (4) the color and brand of the suspect's fanny pack. The specificity provided by the CI bolsters

---

[8] The location provided by the CI was within a high crime area. Although Defendant's presence in a high-crime area alone cannot warrant a *Terry* stop, "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Wardlow*, 528 U.S. at 674-75 (citations omitted).

his reliability and suggests that the tip was based on personal knowledge. As the Third Circuit noted in *Johnson*, 592 F. 3d at 450, "the level of detail of information provided can enhance an informant's credibility," *see White*, 496 U.S. at 332, as can supplying law enforcement with "detailed information regarding, model, color, and other distinctive characteristics of [a] vehicle," *see United States v. Nelson*, 284 F.3d 472, 483 (3d Cir. 2002).

Nevertheless, Defendant argues that the CI was proven unreliable because Defendant did not possess a firearm in his fanny pack. Mot. at 8. But it is not clear that the CI was in fact wrong. The CI stated that the suspect was "*known*" to carry a firearm in his fanny pack—not that the suspect *always* carried a firearm in his fanny pack. Incident Report at 2. The Court considers it a bridge too far to label the CI as an unreliable source on these grounds, especially considering law enforcement corroborated nearly every other piece of information provided by the CI up until the point of the seizure.

Furthermore, it was not necessary for the CI's tip to lead to the discovery of a firearm in the fanny pack as law enforcement may have expected because "predictive information is not required where 'an officer had objective reason to believe that a tip had some particular indicia of reliability.'" *United States v. Torres*, 534 F.3d 207, 213 (3d Cir. 2008) (quoting *United States v. Perkins*, 363 F.3d 317, 325 (4th Cir. 2004)) (citations and internal quotations omitted). This is because when "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Alabama v. White*, 496 U.S. 325, 331 (1990) (citing *Gates*, 462 U.S., at 244). As mentioned above, law enforcement corroborated nearly every piece of the CI's account up until the seizure. The fact that a subsequent piece of information did not pan out as anticipated does not negate the totality of the circumstances at the point of seizure. In other words, based on the

8

accuracy of the CI's information, it was reasonable for law enforcement to conclude he was "probably right" about other facts he alleged, including that the suspect was engaged in criminal activity and that there might be a firearm in the black Nike fanny pack the CI told law enforcement this individual would be wearing (and which law enforcement saw the individual wearing).

But the Court does not rely just on the CI's tip in considering whether there was reasonable suspicion—it also considers "the other circumstances the police encountered prior to the stop that would give rise to reasonable suspicion." *Carstarphen*, 298 F. App'x 151, 156 (3d Cir. 2008) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). One corroborating factor is the presence of a suspect in a high crime area. *Id.* Here, the CI placed the suspect, a seller of illegal prescription pills, in an area known to law enforcement for open-air drug trafficking. Incident Report at 1-2. The CI also told law enforcement that this individual drove a vehicle that officers had frequently seen in this high crime area. *Id.* at 1-2.

A tip's temporal and geographic proximity to the reported crime should also be considered when determining whether law enforcement had reasonable suspicion. *United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir. 2006). Law enforcement received the tip from the CI during the week of June 6, 2021, and the stop at issue occurred (at most) five days later on June 11, 2021. Incident Report at 1. Plus, the stop occurred in the exact area of Newark, New Jersey, in which the CI stated this individual would be found. *Id.* at 2. Thus, both the temporal and geographic proximity of the tip further support the conclusion law enforcement had reasonable suspicion to stop the suspect.

## III.    CONCLUSION

In sum, law enforcement had reasonable suspicion to conduct a *Terry* stop of Defendant. The Supreme Court has previously defined reasonable suspicion as "considerably less than proof

9

of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 U.S. 1, 7 (1989). In light of the totality of the circumstances, including: (1) the CI's detailed tip; (2) law enforcement's observations of Defendant in a high-crime area, entering the Buick (a vehicle known to law enforcement to frequent the high-crime area); and (3) that at the point of the seizure seemingly every detail provided by the CI aligned with law enforcement's observations, there was reasonable suspicion to conduct a *Terry* stop. *Nelson,* 284 F.3d at 483. Therefore, the Court **DENIES** Defendant's Motion with respect to his contention that the stop on June 11, 2021, was unconstitutional. Accordingly,

**IT IS**, on this **27ᵗʰ** day of May 2025, for the reasons set forth above,

**ORDERED** that Defendant's Motion, D.E. 77, is **DENIED** with respect to the challenge to the stop of Defendant on June 11, 2021; and it is further

**ORDERED** that at the upcoming evidentiary hearing, the parties shall address the disputed versions of the *search* of Defendant's fanny pack; and it is further

**ORDERED** that the Court will reserve judgment on all other aspects concerning Defendant's Motion until a later point.

Evelyn Padin, U.S.D.J.