<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HASSAN CHILDS | No. 22cr30 (EP)<br><br>OPINION |

**PADIN, District Judge.**

Presently before the Court are several motions *in limine* filed by both the Government and Defendant Hassan Childs. In the near future, the Court will hold an evidentiary hearing to resolve material disputes related to a few of these motions—namely, Defendant's motion to suppress surrounding Defendant's arrest on July 11, 2021. *See* D.E. 99. However, in the interest of streamlining the outstanding issues in this matter, the Court now resolves motions that are unrelated to the issues to be addressed at the upcoming hearing.

Below, the Court resolves three motions: (1) Defendant's motion for the Court to hold a *Franks* hearing (herein, "Defendant's *Franks* Motion"); (2) Defendant's motion to compel the Government to produce personnel and/or internal affairs files of the officers who participated in his arrest (herein, "Defendant's Personnel Files Motion");[1] and (3) the Government's motion for the Court to admit one of Defendant's prior convictions under Federal Rule of Evidence 609 (herein, the "Government's Impeachment Motion").[2]

---

[1] Defendant's *Franks* Motion and Personnel Files Motion are included in D.E. 77, ("Defendant's Omnibus Motion" or "Def Mot."). The Government opposes these motions. D.E. 90 ("Government's Opposition" or "Gov. Opp'n"). Defendant replied. D.E. 101 ("Def. Reply").
[2] The Government's Impeachment Motion is included in D.E. 90 ("Gov. Mot."). Defendant opposes. D.E. 97 ("Defendant's Opposition" or "Def. Opp'n"). The Government replied. D.E. 102 ("Gov. Reply").

For the reasons that follow, the Court will **DENY** Defendant's *Franks* Motion and Personnel Files Motion, and **GRANT** the Government's Impeachment Motion.

I.   **BACKGROUND**[3]

In early June 2021, a recently arrested confidential informant[4] ("CI") told officers in the Essex County Sheriff's Office ("ECSO") that a short and stocky black male with short hair, a full beard, and glasses was selling illegal prescription pills near Avon Avenue and South 10th Street of Newark, New Jersey. D.E. 77, Ex. A ("Incident Report") at 1. According to law enforcement, this is an area known for open-air drug trafficking. *Id.* The CI also informed officers that this individual drove a gold Buick with dark tinted windows bearing New Jersey temporary license plate number W140318 (the "Buick"), a vehicle known by law enforcement to frequent the area where the CI placed it. *Id.* at 1-2. In addition, the CI told law enforcement that Defendant is "known to carry a firearm in his black Nike fanny pack." *Id.* at 2.

Based on this information, around 1:00 PM on June 11, 2021, several members of law enforcement conducted surveillance in the area. *Id.* One member of law enforcement saw a gold Buick with a license plate number matching the one provided by the CI parked in the driveway of a house on Avon Avenue, partially blocking the sidewalk, and protruding out onto the street. *Id.* A few moments later, a man[5] matching the CI's description—a short stocky black male with a full beard and glasses wearing a black Nike fanny pack around his torso—exited the front door of the house and opened the Buick's front passenger side door. *Id.* Then, the individual opened the back

---

[3] When deciding pretrial motions, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980).
[4] The CI had been arrested for selling illegal prescription pills in Newark, New Jersey, and according to the Government, provided information to law enforcement in the hope of reducing his sentence. Gov. Opp'n at 1.
[5] Later identified as Defendant.

2

passenger side door, removed a large bag from the back seat area of the car,[6] and placed it inside of the trunk. *Id.* At this point, law enforcement requested back-up, exited their vehicles, and approached the individual to further investigate. *Id.*

Although the parties dispute exactly what happened next, they seem to agree that law enforcement approached Defendant, announced they were police, and then frisked his black Nike fanny pack for weapons. *Id.*; Def. Mot. at 5. The officer who frisked Defendant claims to have "immediately felt what seemed like loose round pills that were not contained within a bottle" inside the fanny pack. Incident Report at 2. However, according to Defendant:

> Officers ran toward me and announced themselves as police. I was told to put my hands up and I complied. The officer closes [sic] to me put one hand on the "fanny pack" I had around my chest and frisked my body with his other hand. Immediately after frisking me the officer removed the "fanny pack" from my person and asked me "where is the weapon?" He then proceeded to unzip the "fanny pack" and search through it. The officer then unzipped the inner pocket of the "fanny pack" and began removing my identification, miscellaneous cards and 2 chains before removing the pills which were in a small sandwich bag.

Childs Affidavit ¶ 4.

Law enforcement recovered 14 yellow round pills from the fanny pack, which were suspected (and later confirmed) to be oxycodone.[7] Incident Report at 2; *see also* Gov. Opp'n at 2. The officers then arrested Defendant for unlawful possession of the pills. Incident Report at 2.

Subsequent to his arrest, Defendant refused to provide consent to search the Buick. *Id.* Law enforcement then conducted a canine sniff of the Buick, which yielded a positive indication for weapons in the trunk. *Id.* After obtaining a search warrant for the Buick,[8] law enforcement

---

[6] Defendant states this was a boxed child's car seat. D.E. 90, Ex. B, Affidavit of Hassan Childs, ("Childs Affidavit") ¶ 3.
[7] The Court makes no findings of fact and takes no position on the constitutionality of this *search*, which will be addressed at the upcoming evidentiary hearing.
[8] D.E. 90, Ex. C at 9-11 (the "Search Warrant").

3

found a Smith & Wesson, model 17-2, .22 caliber six-shot revolver, bearing serial number K786158, loaded with six rounds of ammunition in the center console of the car. Gov. Mot. at 3.

On August 11, 2021, Defendant was arrested for possession of the firearm and ammunition. *Id.* After about six months in state custody, on January 18, 2022, a federal Grand Jury indicted Defendant for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). D.E. 1. On July 5, 2022, Defendant was arrested by the U.S. Marshals Service and arraigned before the Hon. Jessica S. Allen, U.S.M.J. D.E. 5. On February 28, 2025, the Government filed a superseding indictment, which added a count of possession with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

## II.    `ANALYSIS

### A.    The Court Will Deny Defendant's *Franks* Motion

Defendant seeks a *Franks* hearing as he claims there is false information in the affidavit[9] used to obtain the Search Warrant, which, if removed from the Search Warrant, would negate the probable cause determination. Def. Mot. at 11-24.

The Fourth Amendment "prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012). In limited circumstances, a defendant can challenge the truthfulness of statements in a search warrant affidavit at a *Franks* hearing. *Franks v. Delaware*, 438 U.S. 154 (1978). To do so, the defendant must: "(1) make a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, *and* (2) demonstrate that the false statement or omitted facts are

---

[9] D.E. 77, Ex. C at 1-9 (the "Search Warrant Affidavit").

'necessary to the finding of probable cause.'" *Pavulak*, 700 F.3d at 665 (quoting *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006)).

Defendant contends that the Search Warrant Affidavit contains false statements that demonstrate "a reckless disregard for the truth." Def. Mot. at 16. "To determine the materiality of the misstatements and omissions, [a court] excise[s] the offending inaccuracies and insert[s] the facts recklessly omitted, and then determine[s] whether or not the corrected warrant affidavit would establish probable cause." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (internal citations omitted). "Probable cause exists if there is a fair probability that the person committed the crime at issue." *Id.* In conducting this analysis, the Court examines the "totality of the circumstances" as set forth in the affidavit attached to the search warrant being challenged. *United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005). Under this flexible standard, "the task . . . is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 235 (1983)).

Initially, the Court notes that "the validity of the [S]earch [W]arrant is immaterial because, pursuant to the automobile exception, law enforcement could search the entirety of the [Buick] without a warrant." *United States v. Wimbush*, Crim. No. 19-134, 2020 WL 1873020, at *18 (D.N.J. Apr. 15, 2020) (citing *United States v. Donahue*, 764 F.3d 293, 299 (3d Cir. 2014)). "The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" *United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002) (quoting *Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996)).

There was probable cause to search the Buick under the automobile exception once the canine sniff alerted law enforcement to firearms. *See United States v. Pierce*, 622 F.3d 209, 213 (3d Cir. 2010) ("It is also well-established that . . . a dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car."); *see also Burton*, 288 F.3d at 100-02 (finding a warrantless search of a car justified under the automobile exception where a canine sniffing dog alerted law enforcement to narcotics in the car). Accordingly, the Court denies Defendant's *Franks* Motion on grounds unrelated to the Search Warrant or the Search Warrant Affidavit because law enforcement did not need a warrant to search the Buick in the first place. *See Smith v. McCollough*, 97 F. Supp. 2d 626, 635 (M.D. Pa. 1999), *aff'd* 225 F.3d 650 (3d Cir. 2000) (concluding that because the automobile exception to the warrant requirement applied, the challenger's claims regarding deficiencies in the search warrant were moot).

For the avoidance of doubt, however, Defendant's *Franks* Motion fails on the merits for a related reason as well: because probable cause still exists under the reconstructed search warrant. As noted above, the canine sniff—which yielded a positive result to firearms in the Buick—is sufficient by itself to establish probable cause. *United States v. Johnson*, 434 F. App'x 159, 163 (3d Cir. 2011) (concluding that officers had probable cause to impound a car and search it pursuant to a warrant after a "canine sniff yielded a positive hit"). Defendant offers no challenge to the canine sniff,[10] which would still be part of the reconstructed search warrant. Thus, even if the Court accepted all of Defendant's arguments regarding the reconstructed affidavit as true, probable cause still existed to search the Buick. Because Defendant cannot demonstrate that the challenged

---

[10] The canine sniff is notably absent from Defendant's Motion.

6

statements and omissions are "necessary to the probable cause determination," *Yusuf*, 461 F.3d at 383, the Court will **DENY** his *Franks* Motion.[11]

B.    **The Court Will Deny Defendant's Personnel Files Motion**

Defendant also requests production of the "personnel and/or internal affairs files of the officers that participated in his arrest." Def. Mot. at 27.

The Fifth Amendment requires the Government to disclose information to a defendant that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Under *Giglio v. United States*, 405 U.S. 150 (1972), the Government must "disclose evidence that goes to the credibility of . . . prosecution witnesses." *Buehl v. Vaughn*, 166 F.3d 163, 181 (3d Cir. 1999). In *United States v. Dent*, the Third Circuit explained that although *Brady* mandates that the prosecution "disclose impeachment material that is exculpatory to the defendant, it does not require that the prosecution make [information] available for the defendant's general perusal. Instead, the Government need only direct the custodian of the [information] to inspect them for exculpatory evidence and inform the prosecution of the results of that inspection, or alternatively, submit the files to the trial court for *in camera* review." 149 F.3d 180, 191 (3d Cir. 1998). "A defendant seeking an *in camera* inspection to determine whether files contain *Brady* material must at least make a plausible showing that the inspection will reveal material evidence." *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001) (citing *Pennsylvania v. Ritchie,* 480 U.S. 39, 58 n. 15 (1987)). Mere speculation is not enough. *Id.* Courts have warned that "this [*Brady*] obligation is not to be used, however, to permit a defendant to obtain wholesale discovery of the government's

---

[11] Because the Court denies Defendant's *Franks* Motion given his failure to satisfy part two of the *Franks* test, the Court does not consider the standing issue raised by the parties.

7

principal case." *United States v. Woods*, Crim. No. 07-114, 2008 WL 2622902, at *3 (W.D. Pa. June 27, 2008) (citing *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983)).

Indeed, absent some articulable reason beyond "mere speculation," courts have routinely denied defendants' requests for access to police personnel files in myriad contexts. *United States v. Allick*, Crim. No. 11-20, 2012 WL 592924, at *4 (D.V.I. Feb. 22, 2012) (citing *United States v. Lafayette*, 983 F.2d 1102, 1106 (D.C. Cir. 1993)) (denying disclosure of police officers' personnel files in motion for new trial because "nothing in appellants' brief informs us why they have any reason to believe that the personnel files would provide any useful evidence whatsoever"); *see also United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985) ("Mere speculation that a government file may contain *Brady* material is not sufficient to require a remand for *in camera* inspection."). Ultimately, the "key question [] is whether the defendant has articulated a reasonable basis for his belief that the [personnel files of the officers who participated in his arrest] contain discoverable information." *Allick*, 2012 WL 592924, at *4 (cleaned up).

Defendant contends that production of the personnel files of all members of law enforcement who participated in his arrest is justified because "with police witnesses, the existence of an internal affairs file and the production of its contents is the appropriate way to attack the credibility of officers. Moreover, it is an appropriate means by which [Defendant] can fully exercise his constitutional right to confront the witnesses." Def. Mot. at 27. This argument does not provide a basis for the Court to conclude that the personnel files contain discoverable information, nor does it explain why Defendant should be given the personnel files of *non*-testifying witnesses (*i.e.*, members of law enforcement who participated in Defendant's arrest but who will not be called to testify at trial) as he requests.

8

Moreover, the Government has confirmed it is complying with its *Giglio*, *Brady*, and Jencks obligations,[12] *see* Gov. Opp'n at 17 n.4, and the Court has no reason to doubt the veracity of that statement.  Given that the Government has committed to disclosing any material it is required to provide, Defendant will be able to confront testifying witnesses in law enforcement with any impeachment information turned over by law enforcement.  Defendant has not offered any explanation to justify ordering the Government to produce the entire personnel files of all members of law enforcement who participated in his arrest.  Therefore, the Court will **DENY** Defendant's Personnel Files Motion.  *See United States v. Perla*, Crim. No. 20-281, 2022 WL 1270944, at *2 (W.D. Pa. Apr. 28, 2022).

C.    **The Court Will Grant the Government's Impeachment Motion**

The Government argues that if Defendant testifies at trial, it should be allowed to impeach his credibility with evidence that he pled guilty (and was convicted of) conspiracy to commit bank fraud, contrary to 18 U.S.C. § 1344, in violation of 18 U.S.C. § 1349.  Gov. Mot. at 11-15 (citing *United States v. Childs*, Crim. No. 12-658, (D.N.J. Sept. 28, 2012) ("Prior Conviction")).

Federal Rule of Evidence 609 governs the admissibility of prior convictions for impeachment purposes.  "[F]or any crime regardless of the punishment, the evidence [of the witness's prior criminal conviction] must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Fed. R. Ev. 609(a)(2).  "The proper test for admissibility under Rule 609(a)(2) does not measure the severity or reprehensibility of the crime, but rather focuses on the

---

[12] Under *Dent*, to comply with its *Brady* obligations, the Government should direct the custodian of the [information] to inspect them for exculpatory evidence and inform the prosecution of the results of that inspection, or alternatively, submit the files to the trial court for *in camera* review. 149 F.3d at 191.

9

witness's propensity for falsehood, deceit[,] or deception." *Cree v. Hatcher*, 969 F.2d 34, 38 (3d Cir. 1992).

Crimes involving "dishonest acts or false statements" include those "that are in the nature of perjury or subordination of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." *Gov't of the Virgin Islands v. Toto*, 529 F.2d 278, 282 (3d Cir. 1976). The Government contends[13] that "an agreement to defraud has the same fundamental nature as the act of defrauding itself." Gov. Reply at 5 (citing *United States v. Cuozzo*, 962 F.2d 945, 948 (9th Cir. 1992)). In *Cuozzo*, the Ninth Circuit affirmed the admission of a defendant's prior conviction for conspiracy and aiding and abetting in dealing in counterfeit obligations or securities, reasoning that because counterfeiting is a crime involving dishonesty and fraud, "it follows that a conviction for *conspiracy* and aiding and abetting the dealing of counterfeit obligations or securities likewise demonstrates a propensity towards testimonial dishonesty." *Cuozzo*, 962 F.2d at 948.

Along these lines, courts around the country have determined that convictions for conspiring to commit various forms of fraud involve an act of dishonesty or false statement and thus were admissible under Rule 609(a)(2). *See Dinges v. Winstead*, No. 07-52, 2009 WL 1099190, at *6 (W.D. Pa. Apr. 23, 2009) (finding prior conviction for criminal conspiracy to commit forgery was a *crimen falsi* conviction); *Kreidler v. Pixler*, Crim No. 06-697, 2010 WL 1537012, at *1 (W.D. Wash. Apr. 15, 2010) ("[T]he crime of conspiracy to commit wire fraud

---

[13] The Government partially relies on *United States v. Wong*, 703 F.2d 65, 66 (3d Cir. 1983) to show that Defendant's conviction contemplates dishonest acts and false statements. Gov. Mot. at 12. However, as Defendant notes, *Wong* involved substantive counts of Medicare fraud and mail fraud, as opposed to conspiracy to commit either.

involves dishonesty because the conspirators conspired to commit fraud."); *United States v. Watts*, 934 F. Supp. 2d 451, 490 (E.D.N.Y. 2013) ("Rule 609(a)(2) mandates admission of [defendant's] prior convictions for bank fraud, conspiracy to commit bank fraud, and false statements, all offenses involving dishonesty or false statements."); *United States v. Bumagin*, 136 F. Supp. 3d 361, 377 (E.D.N.Y. 2015) ("Defendant's [] convictions for conspiracy to possess and pass a counterfeit check and for attempt to pass a fictitious obligation fall under Rule 609(a)(2)."); *United States v. Brashier,* 548 F.2d 1315, 1326-27 (9th Cir. 1976), *cert. denied,* 429 U.S. 1111 (1977) (admitting a prior conviction for conspiracy to issue unauthorized securities and mail fraud under Rule 609(a)(2)).  This Court will follow suit.

In Opposition, Defendant contends that his prior conviction does not meet the criteria for admission under Rule 609(a)(2) primarily because the Court can only consider the elements of conspiracy, rather than the substantive offense of bank fraud, in determining whether Defendant has been convicted of a crime involving dishonesty as required under Rule 609(a)(2).  Def. Opp'n at 17.  According to Defendant, because the elements of conspiracy under 18 U.S.C. § 1349 (the statute of conviction) do not require proving either a dishonest act[14] or false statement (as required by Rule 609(a)(2)), his conviction cannot be admitted under that Rule.  *Id.*

The Court disagrees with Defendant that it cannot look beyond the elements of conspiracy to determine whether Defendant's conviction rested upon facts establishing dishonesty.  *See e.g., United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998) (looking beyond the elements of larceny to find a defendant who pled guilty to stating she qualified for food stamps in a sworn statement

---

[14] Defendant relies on *United States v. Obaygbona*, 556 F. App'x 161, 164 (3d Cir. 2014) for the proposition that § 1349 does not explicitly require proof of an overt act.  However, the Third Circuit in *Obaygbona* stated that "we need not decide th[at] issue.  Whether a § 1349 conspiracy requires an overt act is, at the very least, 'subject to reasonable dispute.'"

11

committed an offense admissible for impeachment purposes under Rule 609(a)(2)). But even if the Court only relies on the elements of conspiracy 18 U.S.C. § 1349, the elements of the underlying offense are still considered. A comment in the Third Circuit's Model Jury Instruction for Conspiracy (6.18.371A) explains that:

> In addition to instructing on the elements of conspiracy to commit an offense against the United States, **the trial judge must also instruct on the elements of the substantive offense(s) that is (are) the object of the conspiracy.** *See, e.g., United States v. Yasbin*, 159 F.2d 705 (3d Cir. 1947) ("An examination of the record in this case discloses that while the trial judge charged the jury as to the elements of the crime of conspiracy he did not instruct them as to the elements of the substantive offense involved in the conspiracy. Consequently the judgment of the conviction is reversed . . . .").

As the model jury instructions show, the elements of bank fraud are a part of the elements of conspiracy to commit bank fraud. After all, Defendant was not convicted of "conspiracy," but rather, "conspiracy *to commit bank fraud*." *See* D.E. 99 in Prior Conviction. The Court in turn concludes that a conviction for conspiracy requires consideration of the elements of the underlying substantive offense.

In this case, the substantive offense that was the object of Defendant's conspiracy was bank fraud. 18 U.S.C. § 1344, the bank fraud statute, states:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

Bank fraud is undoubtedly a crime involving dishonesty. *See, e.g.*, *United States v. Dukes*, No. 11-4269, 2014 WL 4851489, at *3 (E.D. Pa. Sept. 30, 2014). By pleading guilty to conspiring to commit bank fraud, Defendant admitted to conspiring to commit a *crimen falsi* crime.

12

Following the reasoning of the Ninth Circuit in *Cuozzo*, the Court concludes that a conviction for conspiracy to commit bank fraud also "demonstrates a propensity towards testimonial dishonesty." 962 F.2d at 948.

Under Rule 609(a)(2), "if the prior conviction involved dishonesty or false statements, the conviction is automatically admissible insofar as the district court is without discretion to weigh the prejudicial effect of the proffered evidence against its probative value." *Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004) (quoting *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 523 (3d Cir. 1997)). Therefore, Defendant's conviction must be admitted pursuant to Rule 609(a)(2) unless it is barred by Rule 609(b), which places limitations on the admissibility of convictions that are more than ten years old. *United States v. Hampton*, Crim. No. 15-302, 2017 WL 1632594, at *3 (E.D. Pa. May 2, 2017) (citing Fed. R. Evid. 609(b)). The age of a conviction is measured from the date of the conviction or the date of the defendant's release from confinement for it, whichever is later. *Id.* Because Defendant was incarcerated for this conviction until October 2016, Gov Mot. at 12 n.6, this limitation does not bar admission of the conviction. Should Defendant testify, the Government may introduce his 2012 conviction for conspiracy to commit bank fraud. The Court will **GRANT** the Government's Impeachment Motion.[15]

---

[15] Because the Court finds Defendant's conviction admissible under Fed. R. Ev. 609(a)(2), it does not consider the Government's alternative argument that Defendant's conviction should be admitted under Rule 609(a)(1)(B).

III.  **CONCLUSION**

For the reasons explained above, the Court will **DENY** Defendant's *Franks* Motion and Personnel Files Motion, and will **GRANT** the Government's Impeachment Motion. An appropriate Order of the Court will follow.

Dated: May 28, 2025

Evelyn Padin, U.S.D.J.

14